UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **VICTORIA ANN TARLETON** | **CASE NO.  6:20-CV-00294** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DG LOUISIANA L L C** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is the Motion to Vacate or Reconsider filed on behalf of One Spine Institute, Inc. and Medfund, LLC (formerly Justice Medical Funding, collectively referred to as "One Spine/Medfund"), who are non-parties to this litigation. (Rec. Doc. 196). One Spine/Medfund urges the Court to reconsider its prior Memorandum Order compelling One Spine/Medfund to respond to Dollar General's subpoena duces tecum. (Rec. Doc. 189). Defendant, DG Louisiana, LLC ("Dollar General") opposes the Motion (Rec. Doc. 216). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is denied.

### Facts and Procedural Background

In this ongoing slip-and-fall case, Medfund is a litigation medical funding company who has paid some of Plaintiff's medical bills from Dr. Leichty at One Spine Institute. At issue is One Spine's response to Dollar General's following request for production:

> Produce any and all correspondence, agreements, contracts, invoices, or other documentation showing any and all agreements between One Spine Institute, including but not limited to its members, physicians, employees, and/or affiliates, and Justice Medical Funding, pertaining to the treatment of Victoria Tarleton.

(Rec. Doc. 166-5, p. 4).

One Spine/Medfund produced various documents in response. (Rec. Doc. 192-2, p. 11 fn. 27, referencing Rec. Doc. 196-6). The only remaining issue is whether One Spine/Medfund must produce unredacted invoices showing the amount Medfund paid for Plaintiff's medical treatment with One Spine and Dr. Liechty. (Rec. Doc. 216-1, p. 13[1]).

This Court has twice before considered the relevancy of the information sought. Earlier this year, the Court denied Plaintiff's motion to quash the subpoena duces tecum to One Spine/Dr. Liechty, holding:

> Regarding No. [6], the Court finds that the requested documents pertaining to One Spine Institute relationship with Justice Medical Funding are relevant to the issues of collateral source, bias, credibility, and causation. See *McClain v. Sysco New Orleans*, No. CV 19-1801, 2020 WL 11028497, at *13 (E.D. La. July 17, 2020), a well-reasoned and thorough analysis with which this Court agrees. See also *Bowling v. Brown*, No. 20-CV-504, 2021 WL 3666848, at *2 (W.D. La. Aug. 18, 2021); *Bonano v. James River Ins. Co.,* No. CV 19-14764, 2020 WL 6157846, at *4 (E.D. La. Oct. 21, 2020). To the extent any of the requested documents are subject to confidentiality provisions, the Court shall consider any appropriate protective order presented.

(Rec. Doc. 123, p. 3).

---

[1] Medfund began paying Plaintiff's medical bills after July 15, 2021. See Rec. Doc. 216-1.

2

Several months later, this Court considered Defendant's motion to compel One Spine to respond to Request No. 6 of the subpoena duces tecum. After Defendant filed the motion to compel, the Court set an expedited briefing schedule, allowing one week for the filing of oppositions. (Rec. Doc. 168). Neither One Spine nor Medfund filed an opposition, and the Court ruled accordingly, reiterating its prior ruling and requiring full production. (Rec. Doc. 189).

One Spine/Medfund now objects to the Court's ruling requiring it to fully respond to Request No. 6 on the grounds that 1) the subpoena was not properly served on One Spine; 2) Dollar General did not properly serve the motion to compel and/or court order setting the expedited briefing schedule; and 3) the amounts Medfund paid for Plaintiff's medical bills with One Spine are confidential and irrelevant and thus not subject to disclosure.

## Law and Analysis

### I.   Service of the Subpoena Duces Tecum to One Spine.

One Spine and Medfund first object to the Court's ruling on the grounds that One Spine was not properly served with the subpoena duces tecum. The evidence shows that "in lieu of…formal discover[y] and [Medfund] responding to formal discovery and providing a deposition," Medfund provided 104 pages of documents to Dollar General's counsel. (Rec. Doc. 196-6; 196-2, p. 11, fn. 27). In February 2022, Dollar General's counsel, Mr. Davies, engaged in email correspondence with

One Spine/Medfund counsel, Julie Quinn, regarding the subpoena. Ms. Quinn requested formal service on herself as One Spine's registered agent, and Mr. Davies promised to serve accordingly. (Rec. Doc. 196-7. See also 216-2).

According to Dollar General's Proof of Service, on February 4, 2022, a process server served a copy of the subpoena on Julie Quinn, with the name "Carleah Joseph" written at the bottom. (Rec. Doc. 166-5). On March 29, 2022, Ms. Quinn responded to the subpoena on behalf of One Spine. (Rec. Doc. 166-6). Ms. Quinn did not object to any of the responses on the grounds of failure to serve or otherwise reserve One Spine's objection for improper service. One Spine therefore waived its objection for insufficiency of service of subpoena. See e.g. *CresCom Bank v. Terry,* 269 F. Supp. 3d 708, 711 (D.S.C. 2017).

Further, One Spine/Medfund relies upon F.R.C.P. Rule 4, governing service of process, arguing that service was improper, because the subpoena was not formally served upon its agent for service of process, Ms. Quinn, personally. Rule 45, which governs service of subpoenas, requires personal service on the person named in the subpoena, but it is silent regarding service on a corporation. The Eastern District of Louisiana reasoned:

> Rule 45 is silent regarding whether a party may serve a subpoena onto a corporation through its agent, courts rely upon service under Rule 4 as guidance. *State Farm Mut. Auto Ins. Co. v. CPT Medical Services, Inc.*, 04CV5044ILGKAM, 2005 WL 2465818, at *3 (E.D.N.Y. Oct. 6, 2005). Where a witness named in a subpoena is a corporation, the subpoena may be served upon an officer, managing

> agent, or general agent of the corporation. *Ravannack*, 2002 WL 1770936, at *3; *see also In re Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43, 46 (2d. Cir. 1985) (holding that "[a] corporation may be served through an officer or agent explicitly or implicitly authorized to accept service of process.") However, it is generally proper to address a subpoena to a corporation's records custodian or the corporation itself, requiring that it produce documents on behalf of the corporation. *Ravannack*, 2002 WL 1770936, at *3.

*Abbott v. Graves,* No. CV 07-00454, 2008 WL 11353750, at *2 (E.D. La. May 12, 2008).

The face of Dollar General's Proof of Service indicates that the subpoena was formally served pursuant to Rule 45 upon One Spine's agent, Julie Quinn. (Rec. Doc. 166-5). One Spine submitted the affidavit of Carleah Joseph, who attests that she staffs the desk in the reception area of the building where Ms. Quinn's office is located. (Rec. Doc. 196-8). It was certainly reasonable for the process server to assume that Ms. Joseph was Ms. Quinn's receptionist or assistant, as could constitute proper service on Ms. Quinn under Louisiana's service rule, La. C.C.P. art. 1235. See also F.R.C.P. Rule 5(b), which provides that a discovery paper required to be served on a party may be served on an attorney and/or by leaving it "at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office." The Court declines One Spine/Medfund's invitation to "split hairs" on whether service was proper, especially where Ms. Quinn responded to the subpoena on One Spine's behalf, without noting an objection for

5

improper service, after the process server served Ms. Joseph at the receptionist desk of Ms. Quinn's office.

### II.    Service of the Motion to Compel and Briefing Order.

One Spine/Medfund next challenges the Court's ruling on the grounds that Dollar General's motion to compel and the Court's expedited briefing order were not properly served. F.R.C.P. Rule 5 requires service of motions and orders on parties. The rule does not address service of motions on non-parties, but it is nonetheless instructive. Rule 5(b)(2) provides that service may be accomplished by "sending [the paper] to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing--in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served."

As had apparently been the customary mode of communication between them (see e.g. Rec. Doc. 216-3), Mr. Davies emailed Ms. Quinn a copy of Dollar General's motion to compel filed on May 18, 2022, as well as the Court's subsequent order establishing the expedited briefing order. (Rec. Doc. 196-9 and 196-10). No one filed any opposition to Dollar General's motion, and the Court issued the memorandum ruling at issue. Ms. Quinn never contacted the Clerk or the Court within the two weeks between the filing of Dollar General's motion and the Court's ruling. The Court cannot say that Mr. Davies's service of the motion by email to One Spine's

6

registered agent was improper. Once on notice of the pending motion, it was incumbent upon One Spine/Medfund and/or Ms. Quinn to notify the Court of its/their representation so that electronic notice could be established or extensions requested if needed. Neither the Clerk nor the Court is obligated to identify a representative for a non-party. Therefore, the Court's prior order compelling One Spine to fully respond to the subpoena will not be vacated on these grounds.

### III. Relevancy of the Requested Documents.

Having found its prior ruling is not defective for lack of service or notice, the Court could deny One Spine/Medfund's Motion to Vacate on these grounds alone. Nevertheless, for the sake of fairness, the Court will consider One Spine/Medfund's argument that the unredacted invoices, showing the amount Medfund paid for Plaintiff's treatment at One Spine, is not subject to production. The Court previously held that this information is relevant to the issues of collateral source, bias, and credibility, relying particularly on *McClain v. Sysco New Orleans*, No. CV 19-1801, 2020 WL 11028497, at *13 (E.D. La. July 17, 2020). But for the interest of space and efficiency, this Court would duplicate Magistrate Judge van Meerveld's thorough, well-reasoned, and imminently sound analysis and opinion in *McClain*, a case which remains exactly on point. In *McClain*, Medport, a medical factoring company, purchased Dr. Liechty's accounts receivables for the plaintiffs in that case. Judge van Meerveld compelled the providers' billing administrators to produce

7

documents, including invoices showing Medport's discounted amounts, to the defendants. The court held that, in the discovery context, the information was relevant to the issues of collateral source and bias of medical providers. *Id.* at *9-12. Regarding collateral source, the court outlined several cases reaching contrary conclusions and ultimately found:

> Here, the court finds some reason to question whether the parties involved are operating at arm's length. The information submitted by the defendants in reply suggests a relationship between Medport, plaintiffs continuing to receive medical treatment, and the medical providers, in which Medport (through its servicer) approves additional treatment, keeps track of litigation status, and readily offers up opportunities for discounts. The attorneys may also be involved in some way, as the emails indicate that their approval for further medical treatment and/or funding is also sought. Indeed, it appears that the sale of receivables to Medport may be an alternative to requiring the attorney to guarantee payment. The court finds that the agreement between Medport and the billing administrators could shed further light on that relationship for purposes of understanding what plaintiffs remain truly obligated to pay. The agreement and the price paid to the medical providers may also bear on the determination of whether the arrangement here is like the one in Williams, where the court held that plaintiffs could not collect the discount between the amount paid to the doctors and the full billed amount because their patrimony had not decreased to obtain that discount.

*Id.* at *10.

Similarly, in this case, Medfund is a factoring company which specializes in purchasing invoices from medical providers for patients involved in litigation. (See Rec. Doc. 196-3). According to the Memorandum of Understanding (MOU) between Medfund, Plaintiff's counsel, and Plaintiff, Medfund participates with

8

medical providers to secure treatment for accident-related injuries. Medfund does not charge interest or fees but "[d]ue to the significant financial commitment that [Medfund] makes to medical providers," Medfund conducts comprehensive case analysis of all aspects of the case, including liability assessment, insurance coverage, evaluation of pre-existing medical condition and venue, and "determination that the medical experts can provide a trustworthy opinion pertaining to the causal link between injuries and the accident." (Rec. Doc. 196-4). Pursuant to this arrangement, Plaintiff entered a Contract for Payment/Medical Lien wherein she agreed to be personally responsible for full payment of her medical bills. (Rec. Doc. 196-5). Plaintiff's counsel consented to the contract, but he did not thereby personally guarantee payment. Rather, Plaintiff's counsel agreed to withhold funds from settlement, judgment, or verdict to pay the provider in full. (Id. at p. 2). As in *McClain*, the amount of Medfund's discount is discoverable as to an understanding of the amount Plaintiff is truly obligated to pay and the amount to which Plaintiff could truly recover under the collateral source doctrine.

Regarding bias, Judge van Meerveld reasoned as follows:

> [E]ven if the agreement and the sales price were not relevant to the collateral source rule issue, the court finds them both relevant the issue of bias. The bigger plaintiffs' recovery in this matter, the more Medport will collect on the outstanding accounts receivable. Medport might be inclined to make future purchases from medical providers whose accounts receivable result in better recovery, and this might give the medical providers an incentive to give testimony that is favorable to a finding of liability and a bigger damages award. Further, the emails

9

submitted by defendants indicate that Medport may approve funding of additional medical treatment,[17] which could similarly give medical providers a bias in favor of testimony that would support a bigger recovery for the plaintiffs. If Medport is confident it will ultimately be able to collect the amount funded from the plaintiff because she will prove liability at trial and obtain a big damages award, then Medport might be more willing to approve funding. The physician, who understandably hopes to be paid for work performed, might be inclined to testify favorably to a plaintiff on causation and damages so that Medport will be more likely to approve funding of medical treatment in the future and/or purchase that doctor's receivables at a higher rate for the next plaintiff or the next time the contract is negotiated. Certain that she has a guaranteed return on services performed by virtue of the funding agreement, the physician may be motivated to overtreat; at the very least, guaranteed that she will recover X% of the billings without having to defend them, the physician may be motivated to overbill. As a result, the court finds the agreement between Medport and the billing administrators is relevant to bias because the agreement reflects the relationship between the two. This conclusion is consistent with the rulings in both Thomas and Collins.

The court also finds that the amount of the sale could be relevant to understanding the potential bias. A greater amount might be found more likely to cause bias than a lesser amount because, in the interest of securing future such purchases from the factoring company, the doctor may be incentivized to testify more favorably to plaintiff in terms of causation and the extent of injury.

*Id.*

Such is the instant case. The MOU is especially indicative of a special relationship between Medfund and One Spine, thereby supporting a bias argument. Indeed, it appears that One Spine requested Medfund's participation, and Medfund explicitly relies upon the ability of the "medical expert [to] provide a trustworthy opinion pertaining to the causal link between injuries and the accident." Absent an

10

opinion linking Plaintiff's injuries to the accident, Medfund does not participate (i.e. accelerate the provider's cash flow—a direct benefit for the provider). The fact that Dr. Liechty provided a causation opinion before Medfund's involvement does not render Medfund's participation in this case, or any other future cases involving Dr. Liechty, any less involved.

Medfund attempts to distinguish its relationship with One Spine and Dr. Liechty from those discussed in *McClain* by stating: "[u]nlike MedPort [the funding company involved in *McClain*] Medfund *does not refer patients to particular providers*." (Rec. Doc. 196-2, p. 23) (emphasis in original). Contrary to One Spine/Medfund's statement, *McClain* indicates MedPort did not refer patients to providers either. "Relying on Medport's declaration, the court found that Medport does not refer patients to providers and is not involved in plaintiffs' treatment." *McClain*, at *9, discussing *In re Subpoenas to Medport LA, LLC*, No. 2:20-cv-552, ECF # 24, at 1 (D. Nev. July 1, 2020). See also *Collins v. Benton*, No. CV 18-7465, 2019 WL 6769636, at *3 (E.D. La. Dec. 12, 2019), wherein MedPort was described as a factoring company that was not involved in the plaintiff's treatment and did not make referrals to the provider. Thus, the Court rejects One Spine/Medfund's purported distinction.

As in *McClain*, the evidence suggests the existence of a special relationship between One Spine and Medfund which is relevant to the issues of bias and

credibility. One Spine's agent for service, Ms. Quinn, and Medfund's agent, Mr. Hooks, are in the same office at 112 Founders Dr. (Rec. Doc. 196-6 and 196-7). One Spine and Medfund are represented by the same counsel, Ms. Quinn, in these proceedings. (Rec. Doc. 196). The MOU between Medfund and Plaintiff's counsel states: "[Medfund's] participation has been requested by the provider(s) to review the facts and merits of your client's case, and then to accelerate their cash flow by purchasing the accounts receivable relating to their treatment of your client." (Rec. Doc. 196-4, p. 1). The MOU concludes: "Your long-term success is paramount to [Medfund]; and that is attained and predicated upon strong relationships forged by successful case resolution." (*Id.*)

One Spine received direct benefit of accelerated cash flow when Medfund agreed to take on the case. One Spine therefore conceivably had incentive to involve Medfund. It is arguable that the more money Medfund stands to gain from its transactions with One Spine (i.e. the larger the discount), the more likely Medfund is to continue to doing business with One Spine. One way to increase Medfund's potential profit (i.e. expand the discount gap) is to charge higher rates for treatment to personal injury patients. The amount of Medfund's discounted rate is relevant to bias, credibility, and the reasonableness of Plaintiff's medical bills.

The Court acknowledges Medfund's purchase rates are competitive and agrees that production of unredacted invoices should be subject to a protective order. The Court shall favorably consider a strict protective order presented by the parties.

## Conclusion

For the reasons discussed herein, One Spine/Medfund's Motion to Vacate or Reconsider (Rec. Doc. 196) is denied.

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of June, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE